1
2
3
4
5

**NOT FOR PUBLICATION**

6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9

DOROTHY J. LITTMAN,                          No. C 08-04071 JSW

10

       Plaintiff,                       **ORDER GRANTING**
**DEFENDANT'S CROSS-MOTION**

11

v.                                           **FOR SUMMARY JUDGMENT**
**AND DENYING PLAINTIFF'S**

12

MICHAEL J. ASTRUE,                           **MOTION FOR SUMMARY**
**JUDGMENT**

13

       Defendant.
                                 /

14
15

      Now before the Court is the motion for summary judgment filed by Plaintiff Dorothy J.

16

Littman ("Littman") and the cross-motion for summary judgment filed by Defendant

17

Commissioner of Social Security, Michael J. Astrue ("Defendant").  Pursuant to Civil Local

18

Rule 16-5, the motions have been submitted on the papers without oral argument.  Having

19

carefully reviewed the administrative record and having considered the parties' papers and the

20

relevant legal authority, the Court hereby DENIES Littman's motion for summary judgment

21

and GRANTS the Defendant's cross-motion for summary judgment.

22

                                   **BACKGROUND**

23

**A.      Factual Background.**

24

      Littman brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the

25

Defendant's final decision denying her request for Social Security benefits.  Littman is a forty-

26

five year-old female, approximately five feet and five inches tall, and weighing approximately

27

200 pounds.  (Administrative Transcript ("Tr.") at 23, 245.)  She graduated high school and

28

completed some college course work.  (Tr. at 126, 181.)  Littman previously worked as a

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1  cleaner, an escrow secretary, a receptionist, and a case manager.  (Tr. at 29, 72-77.)

2  Littman has not engaged in substantial gainful activity since April 1, 2003.  (Tr. at 23,

3  120.)  Littman claims disability on the basis of lumbar spine pain, right upper extremity pain

4  and depression.  (Tr. at 120.)  She alleges that these injuries have limited her ability to sit or

5  stand for long periods of time, made it difficult for her to bend or reach, caused muscle spasms

6  in her back, made performing household chores and ascending stairs more difficult for her, and

7  caused mental strain.  (*Id*.)  According to Littman, her back pain began in 1999 after she

8  received epidural anesthesia during the birth of her second child.  (Tr. at 83.)

9  Littman first sought treatment for her back from Dr. Dirk Van Meurs, a doctor at the

10  Richmond Health Center, on February 10, 2003.  (Tr. at 160).  Dr. Van Meurs prescribed

11  Vicodin for Littman's pain.  (Tr. at 160.)  Littman failed to keep two follow up appointments

12  with Dr. Van Meurs in the spring of 2003.  (Tr. at 159.)  Dr. Van Meurs next treated Littman on

13  July 26, 2004 for exacerbation of her back pain.  Dr. Van Meurs again prescribed Vicodin for

14  Littman's pain.  (Tr. at 159.)

15  On February 21, 2006, a consulting physician, Dr. Jaskaran Momi, examined Littman.

16  (Tr. at 165-66.)  Dr. Momi noted that Littman's spinal curves were normal, however he also

17  noted that Littman complained of "severe tenderness on gentle touch to the skin and the upper

18  thoracic area, all over the lumbar area, sacral area, sacroiliac joint area . . . and the muscles in

19  the suprascapular region and gluteal region."  (Tr. at 165.)  Littman denied "any tenderness in

20  the paraspinous muscles in the thoracic or lumbar spines."  (*Id*.)  During Dr. Momi's

21  examination, Littman refused to do any bending and claimed to have suffered from a muscle

22  spasm.  (*Id*.)  Based on the objective findings of his examination of Littman, Dr. Momi found

23  that there were no limitations on sitting, standing, walking, lifting, carrying, reaching, handling,

24  fingering, gripping or feeling, "and there [were] no workplace[] or environmental limitations."

25  (Tr. at 166.)

26  An X-ray of Littman's lumbosacral spine was taken on February 21, 2006, which

27  showed "a slight increase in the lumbosacral angle and lumbar lordosis," "[t]he disc space at

28

1    L5-S1 [was] borderline narrowed," and "[n]o sclerotic degenerative changes . . . present." (Tr.

2    at 166, 168.)

3          On April 25, 2006, Littman was examined by consultative psychologist Ahmed El-

4    Sokkary. (Tr. at 28, 181-84.) After he administered several intelligence tests, Dr. El-Sokkary

5    found Littman's general cognitive ability to be in the borderline range of intellectual

6    functioning. (Tr. at 183.) Dr. El-Sokkary diagnosed Littman as having an "adjustment

7    disorder, with mixed anxiety and depressed mood." (Tr. at 184.) However, Dr. El-Sokkary

8    found that Littman was "capable of maintaining the minium level of concentration, persistence,

9    and pace to do basic work in an environment that her health condition would allow," was able

10   "to understand, remember, and perform simple tasks," and was "able to appropriately interact

11   with supervisors and co-workers." (*Id*.)

12         Littman did not seek further treatment for her back pain until May 2006, when she was

13   examined by Dr. Hai Nguyen. (Tr. at 26, 214.) She visited Dr. Nguyen several times over the

14   next few months, and Dr. Nguyen prescribed pain medication for her. (Tr. at 26, 210-17.)

15         In September 2006, Littman began to see Dr. Bernard Herring at the William Byron

16   Rumford Medical Center. (Tr. at 26, 238.) Over the next year, Littman visited Dr. Herring at

17   least seventeen times for numerous issues including "hypertension concerns, urinary urgency, a

18   chronic cough, allergies, a flu shot, a tuberculosis test . . . a hurt toe, a quarter-sized tender area

19   on her left buttock, congestion, right shoulder pain, sinus problems, and lower back pain." (Tr.

20   at 26, 219-38.)

21         On September 11, 2007, Dr. Herring completed a medical source statement for Littman.

22   (Tr. at 26, 240.) Dr. Herring diagnosed Littman with hypertension, degenerative joint disease,

23   low back pain, and right shoulder pain. (*Id*.) Relying on several X-ray reports and Littman's

24   subjective complaints, Dr. Herring noted significant physical limitations on Littman's ability to

25   sit or stand for prolonged periods of time, her ability to work without taking breaks, and her

26   ability to lift, twist, stoop, crouch, climb ladders or stairs, reach and manipulate with her

27   fingers. (Tr. at 26-27, 242-43.)

28

United States District Court
For the Northern District of California

3

1    Littman's hearing before the Administrative Law Judge ("ALJ") occurred on September

2    13, 2007. (Tr. at 261.) Also present at the hearing was Gerald D. Belchick, Ph.D., a vocational

3    expert. (*Id*.) Dr. Belchick testified that past work as an escrow secretary and a case manager

4    was not consistent with a full scale IQ score of seventy-seven. (Tr. at 295). Littman testified at

5    length about her back injury and the pain associated with it. (Tr. at 278-81.) Littman testified

6    that she takes Tylenol with Codeine and Vicodin for her back pain. (Tr. at 281). She also

7    testified that she experiences pain in the area around her upper arm and underarm. (*Id*.)

8    The Court shall discuss additional facts as necessary in its analysis of the motions.

9    **B.    Procedural Background.**

10   Littman filed applications for supplemental security income ("SSI") and disability

11   insurance benefits ("DIB") on October 21, 2005, alleging that on April 1, 2003 she became

12   unable to work because of her disabling condition. (Tr. at 21, 66.) Littman previously had

13   applied for SSI but had been denied.  (Tr. at 66, 141, 245.) Along with her October 21, 2005

14   application, Littman requested that the Social Security Administration reopen her previously

15   denied application. (Tr. at 66, 141.)

16   On June 12, 2006, the Social Security Administration denied Littman's claims. (Tr. at

17   56.) Littman requested that the Social Security Administration reconsider her application. (Tr.

18   at 55.) On March 1, 2007, after reconsidering Littman's claims, the Social Security

19   Administration again denied Littman's claims for SSI and DIB. (Tr. at 50.) Littman then filed

20   a timely written request for a hearing before an ALJ. (Tr. at 49.)

21   On December 12, 2007, the ALJ issued his decision denying Littman's disability claims.

22   (Tr. at 21.) This appeal followed.

23   **ANALYSIS**

24   **A.    Standard of Review of Commissioner's Decision to Deny Social Security Benefits.**

25   A federal district court may not disturb the Commissioner's final decision unless it is

26   based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C.

27   § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means

28   more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a

*United States District Court*
For the Northern District of California

4

1   reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53

2   F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence exists, courts must

3   look at the record as a whole, considering both evidence that supports and undermines the

4   ALJ's findings. *Reddick*, 157 F.3d at 720.  The ALJ's decision must be upheld, however, if the

5   evidence is susceptible to more than one reasonable interpretation. *Id*. at 720-21.

6   **B.      Legal Standard for Establishing a Prima Facie Case for Disability.**

7           The plaintiff has the burden of establishing a prima facie case for disability. *Gallant v.*

8   *Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).  The ALJ follows a five-step process in

9   determining whether the claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987);

10  *see* 20 C.F.R. § 404.1520.  First, the claimant must not be engaging in substantial gainful

11  activity. § 416.920(b).  Second, the claimant must have a severe impairment. § 416.920(c).

12  Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix 1

13  to the regulation (a list of impairments presumed severe enough to preclude work), the claimant

14  will be found disabled without consideration of age, education, or work experience.

15  § 404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment,

16  the ALJ will assess and make a finding about the claimant's residual functional capacity based

17  on all relevant medical and other evidence in the claimant's case record. § 416.920(e).  If the

18  claimant can still perform her past relevant work, she will not be found disabled, otherwise the

19  ALJ will go to step five. § 416.920(f).  At the fifth step, if the claimant's impairments prevent

20  her from making an adjustment to any other work in the national economy, she will be found

21  disabled. § 404.1520(g).  The claimant has the burden of proof at steps one through four; the

22  burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

23  1999).

24          In Littman's case, the ALJ found, at step one, that Littman had not engaged in

25  substantial gainful activity since April 1, 2003.  (Tr. at 23.)  At step two, the ALJ found that

26  Littman's obesity was a severe impairment but that she did not suffer from any other severe

27  physical or mental impairments.  (Tr. at 23-28.)  In determining that Littman's back and

28  shoulder pain were not severe impairments, the ALJ rejected the limitations imposed by Dr.

*United States District Court*
*For the Northern District of California*

5

1   Herring because the ALJ found no "objective basis" for them.  (Tr. at 27.)  Instead, the ALJ

2   relied on the findings of Dr. Momi and noted that "there are no objective findings that lead to

3   the conclusion that the claimant's condition has worsened since Dr. Momi's examination of

4   her."  (*Id*.)  The ALJ also found Littman's "allegations of disabling pain" not "to be fully

5   credible or reliable."  (*Id*.)  With regard to Littman's mental state, the ALJ noted inconsistencies

6   between Littman's IQ scores and her past work experience, and he found there to be no

7   evidence that Littman "has had more than a very mild mental impairment."  (*Id*.)

8          At step three, the ALJ found that Littman's impairment or combination of impairments

9   did not meet or equal a listed impairment.  (Tr. at 28.)  At step four, the ALJ found that Littman

10   had the residual functional capacity to perform the full range of medium work and again stated

11   that he did not find Littman "credible to the extent that her back pain has been demonstrated to

12   describe a 'severe' impairment."  (Tr. at 29.)  The ALJ found that Littman could perform her

13   "past relevant work as a cleaner, escrow secretary, receptionist" or case manager and that this

14   work was not precluded by her residual functional capacity.  (*Id*.)  The ALJ concluded that

15   Littman was not disabled and denied her applications for SSI and DIB.  (*Id*.)

16          Littman argues that the ALJ's decision should be reversed, because the ALJ committed

17   legal error and his decision was not supported by substantial evidence.  Specifically, Littman

18   contends that the ALJ: (1) improperly dismissed the opinion of her treating physician in favor of

19   the opinion of her examining physician; (2) erred in finding that she did not suffer from a

20   "severe" mental impairment; and (3) improperly rejected her subjective complaints.  The Court

21   will address each of these arguments in turn.

22   **C.**    **The ALJ Did Not Err by Rejecting the Treating Physician's Opinion in Favor of**
       **the Examining Physician's Opinion.**

23

24          Littman argues that the ALJ erroneously rejected the opinion of her treating physician,

25   Dr. Herring, in favor of the opinion of the examining physician, Dr. Momi.  For the reasons

26   discussed herein, despite the fact that Dr. Herring's opinion was "well-supported by medically

27   acceptable clinical and laboratory diagnostic techniques," his opinion was "inconsistent with the

28   other substantial evidence" in the record and was not entitled to controlling weight.  *Orn v.*

United States District Court

For the Northern District of California

1   *Astrue,* 495 F.3d 625, 631 (9th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)).  Therefore, the

2   ALJ offered sufficient "'specific and legitimate reasons'" for favoring Dr. Momi's opinion over

3   Dr. Herring's.  *See Reddick*, 157 F.3d at 725 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th

4   Cir. 1995)).  Further, even if the ALJ was required to give Dr. Herring's opinion controlling

5   weight, the ALJ properly favored Dr. Momi's opinion, because Dr. Momi provided the ALJ

6   with findings from objective medical tests that Dr. Herring had not considered.  *See Orn*, 495

7   F.3d at 632.

8   **1.      Legal Standard.**

9          As a matter of law, "the Social Security Administration favors the opinion of a treating

10   physician over non-treating physicians."  *Id.* at 631; *see* 20 C.F.R. § 404.1527(d).  The treating

11   physician's opinion is given controlling weight when it is "'well-supported by medically

12   acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

13   substantial evidence in [the] case record . . . .'"  *Orn*, 495 F.3d at 631 (alteration in original)

14   (quoting 20 C.F.R. § 404.1527(d)(2)).  If it is given controlling weight, the treating physician's

15   opinion can be rejected only for "clear and convincing" reasons supported by substantial

16   evidence in the record.  *See Lester*, 81 F.3d at 830.

17          If the treating physician's opinion is not given controlling weight, "the ALJ may not

18   reject this opinion without providing 'specific and legitimate reasons' supported by substantial

19   evidence in the record."  *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830).  However, if

20   the examining physician provides the ALJ with "'independent clinical findings that differ from

21   the findings of the treating physician,'" then "such findings are 'substantial evidence'" from

22   which an ALJ may favor an examining physician's opinion over the opinion of a treating

23   physician.  *Orn*, 495 F.3d at 632 (citation omitted).  Independent clinical findings consist of

24   either "(1) diagnoses that differ from those offered by another physician and that are supported

25   by substantial evidence," or "(2) findings based on objective medical tests that the treating

26   physician has not herself considered . . . ."  *Id.*  Even if the ALJ favors the examining

27   physician's opinion, the treating physician's opinion is still entitled to deference, and the ALJ

28

United States District Court

For the Northern District of California

7

United States District Court

For the Northern District of California

1   must consider the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6) to determine what weight to

2   accord that opinion. *See Orn*, 495 F.3d at 633-34.

3       **2.    Analysis.**

4       From September 2006 through September 2007, Dr. Herring treated Littman for

5   numerous ailments. (Tr. at 26, 219-38.) On September 11, 2007, Dr. Herring completed a

6   medical source statement relying on three X-ray reports[1] and on Littman's subjective

7   complaints. (Tr. at 240.) Dr. Herring diagnosed Littman with hypertension, degenerative joint

8   disease, low back pain, and right shoulder pain. (*Id.*) Based on these findings, Dr. Herring

9   opined that Littman could only sit or stand for fifteen minutes at a time and for less than two

10  hours each work day; that she would need the ability to shift positions from sitting to walking or

11  standing throughout the day; that she would need to take unscheduled breaks of ten to fifteen

12  minutes throughout the day; that she would need to elevate her legs six to eight inches for fifty

13  percent of the day; that she rarely lift items weighing ten pounds and never lift items weighing

14  twenty pounds; that she never twist, stoop, crouch, climb ladders or climb stairs; that she not

15  reach with her right arm at all during an eight-hour working day; that she only manipulate with

16  her right fingers fifty percent of the day during an eight-hour day, and that she only grasp with

17  her right hand twenty percent of the day during an eight-hour working day. (Tr. at 242-43.)

18

19

20      [1]    The Court is unable to locate the X-ray reports dated February 13, 2007, and June 21, 2007 anywhere within the record. (*See* Opening Brief ("Br.") at 14, n.119.)

21  Furthermore, though Littman is correct that the ALJ had a duty to develop the record, the ALJ did not err by failing to require that the missing X-ray reports be included in the record. *See*

22  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). An ALJ's duty to develop the record is triggered only "when there is ambiguous evidence or when the record is inadequate to allow for

23  proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In Littman's case, the

24  record before the ALJ was neither ambiguous, nor inadequate to allow for proper evaluation of

25  the evidence. Despite the fact that the X-ray reports themselves are absent from the record, Dr. Herring summarized their results within his report. (Tr. at 26-27). Specifically, Dr. Herring

26  noted that one X-ray showed "mild disc and facet degeneration," another X-ray "reveal[ed] no fracture or subluxation" and the last X-ray was reported by Dr. Herring to be "negative." (Tr at

27  26.) Because Dr. Herring summarized the findings of the X-ray reports, the record was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. As a result, the ALJ

28  did not have a duty to further develop the record. *Mayes*, 276 F.3d at 460.

United States District Court
For the Northern District of California

1    Dr. Herring's assessment of Littman's functional capacity is in stark contrast to that of

2    Dr. Momi, the examining physician.  Dr. Momi examined Littman and performed a number of

3    functional capacity tests.  (Tr. at 165.)  Based on his examination and functional capacity tests,

4    Dr. Momi found that there was no limitation on Littman's ability to sit, stand or walk.  (Tr. at

5    166.)  Dr. Momi also found that there was no limitation on Littman's ability to reach, handle,

6    finger, grip, or feel, and that there were no workplace or environmental limitations.  (*Id*.)

7    Although Dr. Herring was Littman's treating physician, and the opinions of treating

8    physicians are typically given controlling weight, his opinion was clearly contradicted by Dr.

9    Momi's opinion.  *See Orn*, 495 F.3d at 631.  When "the treating doctor's opinion is contradicted

10   by another doctor, the ALJ may not reject this opinion without providing 'specific and

11   legitimate reasons'" for doing so.  *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830).

12   Here, the ALJ gave "specific and legitimate reasons" for rejecting Dr. Herring's opinion and for

13   not giving it controlling weight.  *Lester*, 81 F.3d at 830.  First, the ALJ stated that he could not

14   "find any objective basis for the claimant's limitations as outlined by Dr. Herring," and he noted

15   that "[t]he very X-rays [Dr. Herring] cited are benign or at most mild."  (Tr. at 27.)  Second, the

16   ALJ noted that Dr. Herring had "not recommended any treatment, other than pain medications,

17   to alleviate the claimant's alleged pain."  (*Id*.)  Furthermore, the ALJ noted that there were "no

18   objective findings that lead to the conclusion that the claimant's condition has worsened since

19   Dr. Momi's examination of her."  (*Id*.)  Accordingly, the Court concludes that the ALJ did not

20   err by favoring Dr. Momi's opinion over Dr. Herring's and did not err by not giving Dr.

21   Herring's opinion controlling weight.

22   Moreover, even if Dr. Herring's opinion was entitled to controlling weight, the ALJ was

23   permitted to give greater weight to Dr. Momi's opinion because that opinion was based on

24   "independent clinical findings that differ from the findings of the treating physician," including

25   "objective medical tests that the treating physician has not herself considered . . . ."  *Orn*, 495

26   F.3d at 632 (citation omitted).  "[S]uch findings [constitute] 'substantial evidence.'"  *Id*.

27   Although Dr. Herring saw Littman at least seventeen times, the record does not describe the

28   kind or quality of these examinations.  (Tr. at 219-38.)  As the ALJ pointed out, Dr. Herring's

9

1  treatment records do not reflect, "any X-Ray [sic], MRI, or CT reports, recommendations for

2  surgery, epidural steroid injections, anti-inflammatory medications, physical therapy, exercise,

3  orders to apply heat or cold, or any other therapies for back pain one would expect were there

4  medical concerns about any underlying injury or disease process." (Tr. at 26.)  As best as the

5  Court can discern, and as the ALJ found, Dr. Herring based his opinion of Littman's

6  impairments on: (1) Littman's own subjective complaints of pain; (2) the results of three X-rays

7  of Littman's back and shoulder, which Dr. Herring characterized as "mild," revealed no

8  fracture, and as "negative;" and (3) on positive straight leg raises.  (Tr. at 27, 240-41.)

9       Dr. Momi, on the other hand, performed a series of functional capacity tests and

10  physical examinations.  (Tr. at 164-66.)  He conducted thorough examinations of Littman's

11  neck, abdomen, back, and her extremities.  (Tr. at 165-66.)  He measured her range of

12  movement, muscle strength, grip strength, reflexes and the level of her discomfort throughout

13  testing.  (*Id*.)  Dr. Momi noted that Littman could walk without the help of a walking device.

14  (Tr. at 166.)  Dr. Momi conducted straight leg raise tests and tests measuring Littman's

15  extension and rotation.  (Tr. at 165.)  Dr. Momi performed an array of different objective

16  medical tests that Dr. Herring had not performed, and thus did not consider.  Therefore, the

17  ALJ's rejection of Dr. Herring's opinion, in favor of Dr. Momi's, was supported by substantial

18  evidence.  *See Orn*, 495 F.3d at 632.

19       Although the ALJ properly favored Dr. Momi's opinion, Dr. Herring's opinion still is

20  entitled to deference.  *See id*. at 633.  To determine what weight to give Dr. Herring's opinion,

21  the ALJ is permitted to consider the nature and extent of the treatment relationship, the

22  "supportability" of the opinion, and its consistency with the record as whole.  20 C.F.R. §

23  404.1527(d)(2)-(4); *see Orn*, 495 F.3d at 633.  The treating source is typically given weight,

24  especially if that physician "has seen [the patient] a number of times and long enough to have

25  obtained a longitudinal picture of [her] impairment . . . ."  § 404.1527(d)(2)(i).  Using these

26  factors, the ALJ's decision to favor Dr. Momi over Dr. Herring still is supported by substantial

27  evidence.  As noted, Dr. Herring was Littman's primary treating physician and he had seen

28  Littman for approximately one year.  (Tr. at 26.)  However, Dr. Herring's treatment consisted of

United States District Court
For the Northern District of California

10

**United States District Court**
For the Northern District of California

1  little more than prescribing pain medications.  (Tr. at 26-27.)  Dr. Momi, on the other hand,

2  based his findings on a considerable amount of objective medical testing and explained his

3  opinion in detail.  (Tr. at 164-66.)  Dr. Herring did not explain his opinion, or support it with

4  relevant objective evidence.  (Tr. at 27.)  Therefore, the ALJ could justify affording less weight

5  to Dr. Herring's opinion.  *See e.g.* § 404.1527(d)(3).

6         In this case, the ALJ was permitted to favor the opinion of the examining physician, Dr.

7  Momi, because it was better supported by and consistent with the record.  § 404.1527(d)(2)-(6).

8  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony.

9  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Accordingly, the Court affirms the ALJ's

10  decision because it is supported by substantial evidence and free from legal error.  42 U.S.C. §

11  405(g).

12  **D.  Substantial Evidence in the Record Supports The ALJ's Conclusion That Littman's Mental Impairment Was Not "Severe."**

13

14         Littman argues that the ALJ erred in concluding that her mental impairment was not

15  severe.  A non-severe mental impairment is an impairment that "does not significantly limit [a

16  claimant's] . . . mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Examples

17  of basic work activities include "[u]nderstanding, carrying out, and remembering simple

18  instructions," "[u]se of judgment," and "[r]esponding appropriately to supervision, co-workers

19  and usual work situations."  20 C.F.R. § 404.1521(b).

20        **1.  The consulting psychologist's report supported the ALJ's conclusion that Littman did not suffer from a severe mental impairment.**

21

22         Contrary to Littman's assertions, the report by the examining psychologist, Dr. El-

23  Sokkary, supported the ALJ's conclusion that Littman suffered from a non-severe mental

24  impairment.  An examining physician's report alone can constitute substantial evidence

25  supporting an ALJ's determination regarding an impairment.  *Allen*, 749 F.2d at 579-80

26  (holding that an examining physician's opinion that is based on a thorough examination and

27  objective clinical tests, rather than simple "check marks in boxes on a form supplied by the

28  Secretary" will constitute substantial evidence).

United States District Court

For the Northern District of California

1    Here, the ALJ found that Littman suffered from a non-severe mental impairment.  (Tr. at

2  28.)  In so finding, the ALJ cited to the report of Dr. El-Sokkary.  (*Id.*)  Dr. El-Sokkary is a

3  clinical psychologist, and he examined Littman at the request of the Department of Social

4  Services.  (Tr. at 181-84.)  He diagnosed Littman with an "adjustment disorder, with mixed

5  anxiety and depressed mood."  (Tr. at 184.)  Dr. El-Sokkary found that Littman "demonstrat[ed]

6  a capacity to understand, remember, and perform simple tasks."  (*Id.*)  Although Dr. El-Sokkary

7  found Littman's "overall cognitive ability, as estimated by the Full Scale IQ," to be in the

8  borderline range, he also found that Littman "was capable of maintaining the minimum level of

9  concentration, persistence, and pace to do basic work in an environment that her health

10  condition would allow."  (*Id.*)  He also noted that Littman "was cooperative throughout the

11  evaluation" and that she "would be able to appropriately interact with supervisors and co-

12  workers . . . ."  (*Id.*)  Overall, Dr. El-Sokkary's description, diagnosis and prognosis present

13  ample evidence to support the ALJ's finding that Littman's mental impairments did not

14  significantly limit her ability to do basic work activities and thus that Littman's mental

15  impairment was not severe.  *See Perez Torres v. Sec'y of Health and Human Servs.*, 890 F.2d

16  1251, 1255 (1st Cir. 1989) (finding similar evidence supported an ALJ's conclusion that a

17  claimant's mental impairment was non-severe).  Thus, the ALJ's conclusion that Littman did

18  not suffer from a severe mental impairment was supported by substantial evidence.

19         **2.      The ALJ gave the proper weight to Dr. El-Sokkary's opinion, and properly
               relied on statements made by the vocational expert, Dr. Belchick.**
20

21    Littman also claims that the ALJ wrongly relied on statements by the vocational expert,

22  Dr. Belchick, and wrongly rejected Dr. El-Sokkary's findings.  Though it does not appear to the

23  Court that the ALJ rejected Dr. El-Sokkary's opinion, as Littman contends he did, the ALJ

24  nevertheless was obligated to "explain in the decision the weight given to the opinions of a

25  State agency . . . psychological consultant . . . ."  20 C.F.R. § 404.1527(f)(2)(ii); Soc. Sec.

26  Ruling 96-6P (1996); *see also Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001)

27  (finding that Social Security Rulings do not have the force of law but are binding on all

28

12

United States District Court

For the Northern District of California

1  components of the Social Security Administration and are given "some deference" by the

2  court).

3  The Commissioner's regulations state that the ALJ will determine the severity of the

4  claimant's mental impairment after he rates the degree of functional limitations resulting from

5  that impairment. 20 C.F.R. § 404.1520a(d). The four areas of functional limitation are: (1)

6  activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4)

7  episodes of decomposition. 20 C.F.R. § 404.1520a(c)(3). If the ALJ rates the limitations in the

8  functional areas as "mild" or "none," he generally will conclude that the claimant's impairment

9  is not severe. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds the claimant has a severe mental

10  impairment that neither meets nor is equivalent in severity to any listing, he then will assess the

11  claimant's residual functional capacity. 20 C.F.R. § 404.1520a(d)(3).

12  Here, Dr. El-Sokkary found that Littman had the "capacity to understand, remember and

13  perform simple tasks." (Tr. at 184.) He also found that Littman "was capable of maintaining

14  the minimum level of concentration, persistence, and pace to do basic work." (*Id*.) Dr. El-

15  Sokkary also found that Littman "was capable of adequately communicating and therefore

16  would be able to appropriately interact with supervisors and co-workers." (*Id*.) Implicit in Dr

17  El-Sokkary's findings is that, in his opinion, Littman did not suffer from a severe mental

18  impairment.

19  Although the ALJ was required to address the opinion of the state agency physician, Dr.

20  El-Sokkary, the ALJ adequately explained the weight that he gave to Dr. El-Sokkary's opinion.

21  In his decision, the ALJ cited to Dr. El-Sokkary's report, and summarized its findings. (Tr. at

22  28.) Although the ALJ agreed with Dr. El-Sokkary's overall conclusion that the claimant did

23  not suffer from a severe mental impairment, the ALJ pointed out an inconsistency between the

24  IQ scores, as reported by Dr El-Sokkary, and Littman's past relevant work. (*Id*.) The ALJ

25  noted that "Dr. El-Sokkary does not appear to have considered this inconsistency in his report,

26  but I have considered whether this inconsistency could be due to less than optimal effort, in an

27  attempt to secure benefits." (*Id*.) Contrary to Littman's assertions, the ALJ did not reject Dr.

28  El-Sokkary's opinion, but instead merely pointed out this inconsistency while agreeing with Dr.

United States District Court

For the Northern District of California

1   El-Sokkary's finding of a non-severe mental impairment. (*Id.*) Thus, the ALJ did discuss the

2   weight he gave to the opinion of the non-examining physician, Dr. El-Sokkary.

3   20 C.F.R. § 404.1527(f)(2)(ii)

4       Littman further argues that, the ALJ erred in considering the vocational expert's

5   testimony regarding Littman's IQ scores being inconsistent with her past relevant work.

6   However, a vocational expert "may offer relevant evidence within his or her expertise or

7   knowledge concerning the . . . mental demands of a claimant's past relevant work."

8   20 C.F.R. § 404.1560(b)(2). Here, the vocational expert, Dr. Belchick, gave his testimony,

9   based on his experience and knowledge as a vocational expert about the mental demands of

10  Littman's past relevant work. (Tr. at 295-96.) Dr. Belchick's opinion was that Littman's IQ

11  scores, as reported by Dr. El-Sokkary, were not consistent with her past work as an escrow

12  secretary and as a case manager. (*Id.*) Dr. Belchick said that he would have expected Littman's

13  IQ scores to have been higher given her past relevant work, and the mental demands typically

14  associated with that work. (*Id.*) He also stated that his opinion was based on his expertise as a

15  vocational expert, and not as a psychologist. (*Id.*) Discussing the mental requirements of a

16  claimant's past relevant work is a subject matter fully within the acceptable scope of a

17  vocational expert's opinion. 20 C.F.R. § 404.1560(b)(2) Thus, the ALJ neither erred in

18  questioning Dr. Belchick on this topic, nor erred in taking into consideration Dr. Belchick's

19  opinion on the matter. (*Id.*)

20  **E.      The ALJ Properly Considered Littman's Subjective Complaints of Pain.**

21      Littman claims that the ALJ improperly disregarded her testimony regarding her severe

22  pain.[2] An ALJ must engage in a two-step analysis in order to make a determination of

23

24      [2]    Defendant argues that Littman has failed to address this argument and, as a
    result, it should be deemed waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925,
25  929 (9th Cir. 2003) (noting that "we will not consider any claims that were not actually argued
    in appellant's opening brief" and that "we 'review only issues which are argued specifically and
26  distinctly in a party's opening brief'") (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d
    971, 977 (9th Cir. 1994)). However, the Court does not believe that Littman has failed support
27  her argument to such a degree that it should be deemed waived. Although Littman did not
28  specifically state why the ALJ's stated reasons for rejecting her subjective complaints were not
    "specific, clear and convincing," by calling into question the legitimacy of the ALJ's stated

United States District Court

For the Northern District of California

1    credibility. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007).  First, the ALJ must

2    decide whether there is objective medical evidence of an underlying impairment "'which could

3    reasonably be expected to produce the pain or other symptoms alleged.'"  *Id*. at 1037 (quoting

4    *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  To meet this standard, a

5    claimant must show that her impairments "*could reasonably be expected to* (not that it did in

6    fact) produced some degree of symptom."  *Smolen*, 80 F.3d at 1282 (emphasis in original).

7    Second, if the first test is satisfied and there is no evidence of malingering, "the ALJ may reject

8    the claimant's testimony regarding the severity of her symptoms only if he makes specific

9    findings stating clear and convincing reasons for doing so."  *Id*. at 1284.  The ALJ cannot use

10    general conclusions but must "specify what testimony is not credible and identify the evidence

11    that undermines the claimant's complaints."  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

12    2005); *Orn*, 495 F.3d at 635 (noting that an ALJ may not "discredit a claimant's testimony when

13    a medical impairment has been established" without providing "'specific, cogent reasons for the

14    disbelief'") (citation omitted).

15        In determining the credibility of a claimant's complaints of pain, an ALJ is permitted to

16    consider a number of factors including: "(1) [t]he nature, location, onset, duration, frequency,

17    radiation, and intensity of any pain; (2) [p]recipitating and aggravating factors (e.g., movement,

18    activity, environmental conditions); (3) [t]ype, dosage, effectiveness, and adverse side-effects of

19    any pain medication; (4) [t]reatment, other than medication, for relief of pain; (5) [f]unctional

20    restrictions; and (6) [t]he claimant's daily activities."  *Burch*, 400 F.3d at 680 (quoting *Bunnell*,

21    947 F.3d at 346).  An ALJ also may consider any inconsistencies in the claimant's testimony, a

22    claimant's unexplained "failure to seek treatment or to follow a prescribed course of treatment,"

23    or "observations of treating and examining physicians and other third parties regarding, among

24    other matters, the nature, onset, duration, and frequency of the claimant's symptom[s]."  *Smolen*,

25    80 F.3d at 1284.  If the ALJ supported his credibility determination with substantial evidence in

26

27    reasons for rejecting her subjective complaints, Littman has raised the issue with sufficient
specificity that this Court will not deem it waived.  *Smolen v. Chater,*  80 F.3d 1273, 1281 (9th

28    Cir. 1996).

United States District Court

For the Northern District of California

1   the record, it is not the Court's role "'to second-guess that decision.'"  *Morgan v. Comm'r of the*

2   *Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Fair v. Bowen*; 885 F.2d 597, 603

3   (9th Cir. 1989).

4         Here, the ALJ found that Littman's  medically determinable impairment could

5   reasonably be expected to produce some of the alleged symptoms.  (Tr. at 25.)  The ALJ did not

6   cite any specific evidence of malingering and was therefore required to give "'specific, clear

7   and convincing reasons'" for rejecting Littman's testimony about the severity of her pain.

8   *Vasquez v. Astrue*, 547 F.3d 1101, 1105 (9th Cir. Cal. 2008) (quoting *Lingenfelter*, 504 F.3d at

9   1036).  As discussed herein, the ALJ gave "'specific, clear and convincing reasons'" for

10  rejecting Littman's subjective complaints of pain, and thus he did not err in rejecting her

11  testimony.  *Id*.

12        First, the ALJ stated that he found Littman's excessive pain testimony not credible based

13  on the "lack of objective medical findings that support a conclusion that she is disabled for

14  work."  (Tr. at 25.)  While a "lack of medical evidence cannot form the sole basis for

15  discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."

16  *Burch*, 400 F.3d at 681.  The ALJ noted that the X-rays in the record "are benign or at most

17  mild," and did not constitute objective evidence supporting Littman's assertions of pain.  (Tr. at

18  27.)  Specifically, the ALJ noted that Dr. Herring, the treating physician, summarized the three

19  X-rays that he relied on as "reveal[ing] mild disc and facet degeneration . . . reveal[ing] no

20  fracture or subluxation." and as "negative."  (*Id*. at 26.)  Another X-ray, ordered by the

21  examining physician, Dr. Momi, was similarly mild, and revealed "a slight increase in the

22  lubosacral angle and . . . [n]o sclerotic degenerative changes."  (*Id*. at 27.)  *See Burch,* 400 F.3d

23  at 681 (discounting a claimant's complaints of pain based on X-rays and an MRI showing "mild

24  degenerative disc disease . . . and mild dextroscoliosis").

25        Second, the ALJ stated that he found Littman's excessive pain testimony not credible

26  based on the the "lack of medical treatment for her back pain."  (Tr. at 27.)  "[E]vidence of

27  'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an

28  impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*,

16

United States District Court
For the Northern District of California

60 F.3d 1428, 1434 (9th Cir. 1995)).  The ALJ noted that "Dr. Herring has not recommended any treatment, other than pain medications, to alleviate the claimant's alleged pain," and that Littman's medical history was devoid of any treatments or therapies "one would expect were there medical concerns about any underlying injury or disease process." (Tr. at 25, 27.) *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a claimant's subjective complaints of pain because her complaints were inconsistent with the "minimal, conservative treatment" that she received); *Parra*, 481 F.3d at 751 (rejecting a claimant's subjective complaints of pain because his "physical ailments were treated with an over-the-counter pain medication").

Third, the ALJ found inconsistencies in Littman's "statements and conduct." (*Id*. at 25.)  An ALJ may consider "inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct," in making a credibility determination. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Here, the ALJ pointed out specific inconsistencies between Littman's testimony and that of her friend, Ms. Woods.  (Tr. at 25.)  Specifically, the ALJ noted inconsistencies in Littman's testimony concerning her ability to stay focused, as well as her ability to finish tasks.  (*Id*.)  The ALJ also pointed out inconsistencies between Littman's reported IQ scores, and her past relevant work.  (Tr. at 27.)

The three reasons given by the ALJ for rejecting Littman's subjective complaints of pain are "specific, clear and convincing."  As a result, the ALJ did not err in rejecting Littman's complaints of pain.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Littman's motion for summary judgment and GRANTS the Defendant's cross-motion for summary judgment.  A separate judgment shall be entered, and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: October 21, 2009

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

17

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28